IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 25, 2021

**STATE OF TENNESSEE v. DELVON J. WHITE**

**Appeal from the Criminal Court for Hamilton County
No. 302668, 304878  Barry A. Steelman, Judge**

_____

**No. E2020-00731-CCA-R3-CD**

_____

Defendant, Delvon J. White, appeals the revocation of his probation and reinstatement of his original sentence of incarceration in two cases, arguing that the trial court abused its discretion by not either reinstating his probation or ordering a sentence of split confinement followed by modified conditions of probation to address his mental health and substance abuse.  Following our review of the entire record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Brennan M. Wingerter (on appeal), Assistant Public Defender – Appellate Division, and Kevin L. Loper, (at hearing) Chattanooga, Tennessee, for the appellant, Delvon J. White.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Neal Pinkston, District Attorney General; and Miriam Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

In November 2017, Defendant pled guilty in the Hamilton County Criminal Court in case number 302668 to Class C felony theft of property, misdemeanor assault, and misdemeanor vandalism.  At the same hearing, Defendant conceded he had violated the

terms of his probation in case numbers 299509 and 299510 based on the charges in case number 302668 and by failing drug screens. In case number 3026688, Defendant was sentenced by the trial court to an effective term of five years in the Department of Correction, to be served consecutively to his sentences in case numbers 299509 and 299510, but with furlough granted to the Hamilton County Drug Recovery Court.

On January 22, 2018, the Hamilton County Drug Recovery Court Coordinator filed a "Notice of Drug Recovery Court Violation and Request for Removal" alleging that Defendant had violated the rules of the program by his arrest on January 21, 2018, for possession of ecstasy, possession of marijuana, possession of cocaine, and possession of drug paraphernalia. On February 6, 2018, following a removal hearing, the drug recovery court entered an "Order of Removal from the Drug Recovery Court" in which it found Defendant in violation of the drug recovery court rules, removed him from the program and rescinded his furlough, and transferred his case to the criminal court for a show cause hearing as to why Defendant should not be required to serve his sentences as originally imposed.

Based on the actions that led to his arrest on January 21, 2018, Defendant was indicted by the Hamilton County Grand Jury in case number 304878 with possession of methylenedioxymethamphethamine ("MDMA") with the intent to sell or deliver, possession of marijuana with the intent to sell or deliver, possession of .5 grams or more of cocaine with the intent to sell or deliver, and possession of drug paraphernalia. In October 2018, Defendant pled guilty in the Hamilton County Criminal Court to attempted possession of MDMA with the intent to sell or deliver, attempted possession of cocaine with the intent to sell or deliver, and simple possession of marijuana. The trial court imposed an effective sentence of four years, to be served concurrently to Defendant's effective five-year sentence in case number 302668. The court ordered a period of split confinement, with Defendant placed on supervised probation after service of eleven months, twenty-nine days of incarceration.

On August 28, 2019, a probation violation report was filed alleging that Defendant had violated the terms of probation in his cases based on his assaultive behavior on April 29, 2019, during his period of incarceration resulting in his arrest on two counts of assault and his guilty pleas as charged entered May 6, 2019, in the Hamilton County General Sessions Court. Additionally, the probation violation report alleged that Defendant had failed to report his arrests to his probation officer.

During the revocation hearing on October 17, 2019, Defendant conceded the probation violations. He testified that he had met with the representative of "House of Refuge," which he understood to be a "reentry-into-society program" to help individuals. He acknowledged that it was a one-year faith-based program, that he realized he would be

subject to strict supervision and curfew, that the House of Refuge would take him to his medical and mental health appointments, and that he would be discharged from the program if he refused to take his medications. After ascertaining that Defendant understood the requirements and realized that it was his last chance at a sentence other than full incarceration, the trial court partially revoked and reinstated Defendant's probation in the cases, ordering that Defendant complete the House of Refuge program before being returned to supervised probation.

On December 12, 2019, yet another probation violation report was filed alleging that Defendant had violated the terms of his probation by his dismissal from the House of Refuge in November and his failure to report for a meeting on December 2, 2019, with his probation officer. An addendum to the report was later filed alleging additional probation violations based on: 1) Defendant's arrest on January 9, 2020, for reckless endangerment, criminal impersonation and evading arrest and his March 16, 2020, guilty plea in Hamilton County General Sessions Court to criminal impersonation; 2) Defendant's failure to report the arrest to his probation officer; and 3) Defendant's failure to make any payment toward the restitution which had been ordered in case number 302668.

At the revocation hearing on May 13, 2020, the prosecutor noted that the only sentences active and subject to the current petition for revocation of probation were those in case numbers 302668 and 304878. Christina Barnes, an employee of the Tennessee Board of Probation and Parole who was not Defendant's supervisor but who was the courtroom liaison and had reviewed Defendant's record, testified about Defendant's history of supervision and probation and drug recovery court violations, including Defendant's dismissal from the House of Refuge and his January 2020 arrest for reckless endangerment, criminal impersonation, and evading arrest, which had resulted in his guilty plea in general sessions court for criminal impersonation. She testified that Defendant had been ordered to pay $2,354.05 in restitution for the felony theft conviction in case number 302668, but she had no record of Defendant's making any payments.

Officer Mitchell Recaido of the Chattanooga Police Department testified that he was on routine patrol on January 9, 2020, when he saw a large bonfire on the side of the road with six individuals around it, stopped, and asked for everyone's identification. Defendant was the only one of the six individuals who did not correctly identify himself, providing the false name of "Devon Smith" and one social security number to Officer Recaido and a different social security number to other officers. Officer Recaido and his fellow officers were initially unable to pull up Defendant's information by the name, date of birth, or social security numbers Defendant provided. However, Defendant eventually complied and provided his correct social security number. As soon as Defendant's information popped up on their computer, revealing that Defendant had multiple outstanding warrants, Defendant "bolted."

Officer Recaido testified that three officers chased and tackled Defendant. As the officers were handcuffing him, Defendant broke free and ran again. After another short foot chase, Defendant was recaptured and transported to the Hamilton County Jail, where he had to be carried from the patrol car into the jail and was also combative with the jail staff.

Jonathan Johnson of the House of Refuge testified that when Defendant entered their program, he reviewed with Defendant the form setting out the house rules. Defendant signed the form indicating that he understood and accepted each of the house rules. Approximately twenty-three days later, Defendant was terminated for violation of the rules. Mr. Johnson recalled that there were two separate rule violations, with the second incident resulting in Defendant's termination from the program. First, Defendant had a friend cash his paycheck. Mr. Johnson explained that in order to help the men in their program manage their money, the House of Refuge required them to adhere to strict money management guidelines under which they were given an allowance with the rest of their paychecks deposited into savings accounts. Second, Defendant was found in possession of a prohibited cell phone and refused repeated requests to turn it over, becoming belligerent with the "house man" who made the requests. After Defendant was terminated, the program director came to the house, helped Defendant pack his belongings, and drove him to the home of one of Defendant's relatives.

On cross-examination, Mr. Johnson acknowledged that Defendant was a "mental health consumer." He testified that Defendant was instructed when he entered their program to set up a meeting immediately with "Joe Johnson"[1] to start getting his medication. Mr. Johnson testified that House of Refuge staff were not allowed under Joe Johnson rules to make appointments for Joe Johnson clients, and that it was Defendant's responsibility to make the appointment. He was "pretty sure" Defendant never called Joe Johnson and thus "wasn't on his medicine" unless he brought medication with him from the jail.

Defendant testified that he had a friend cash his first work paycheck for him because he wanted money for his daughter's upcoming birthday. He claimed he had not realized that he was required under the house rules to turn over all of his first paycheck. He stated that he was currently on Zyprexa and Depakote for his mental health and was on a different, but similar, type of medication at the time he left the jail. He claimed that House of Refuge staff stopped giving him his medication and refused his repeated requests for permission to make an appointment with Joe Johnson. He said he was finally able to make an

---

[1] "Joe Johnson" is a reference to the Johnson Mental Health Center in Chattanooga, Tennessee.

appointment and have his medication restored after approximately a week and a half at the House of Refuge, but it took some time for the medication to take effect.

Defendant claimed that the prohibited cellphone belonged to his House of Refuge roommate, whose name he could not recall. He stated that his roommate was playing music on the cellphone when the house man walked in, demanded the phone, and took possession of it from the roommate. According to Defendant, when he was discharged from the program, he accepted a bribe from the roommate for claiming ownership of the cellphone so that it would be returned to Defendant and Defendant could return it to the roommate.

Defendant claimed that his memory of the bonfire-related arrest on January 9, 2020, was blurry. He was not on his prescription medication at the time and was self-medicating with heroin and cocaine. He recalled that he had been homeless and was trying to warm himself at the bonfire. He had no real memory of fleeing from officers or being combative at the jail. Defendant testified that he was currently back on his prescription medication, which helped him to think clearly. His desire, however, was to "come off [his] meds." If released on probation, he would live with his mother in Brainerd and would continue to meet with his counselor at Joe Johnson. Defendant testified that he was twenty-two years old and had never been to prison.

On cross-examination, Defendant acknowledged that he had pled guilty to ten criminal offenses, including four misdemeanor assaults and a theft of property, since August 24, 2016, when he had first been placed on probation. He further acknowledged that he not paid anything toward his restitution in the theft case and that he failed to report as scheduled to his probation officer after his termination from the House of Refuge. He conceded that he had earlier been expelled from the drug recovery court program and had lasted less than a month at the House of Refuge. He testified that when he was finally able to make an appointment with Joe Johnson, he was given a prescription that lasted only a week or two. He stated that he was supposed to follow up with his counselor in order to obtain more medication, but he "started back using drugs."

At the conclusion of the hearing, the trial court found that Defendant had violated his probation by "two blatant violations of [House of Refuge] rules that were easy to follow if he wanted to follow them," by the actions that led to his arrest on January 9, 2020, and by his failure to report to his probation officer. The court specifically accredited the testimony of the House of Refuge representative and the Chattanooga police officer over that of Defendant, finding unbelievable Defendant's explanation of his violations of the House of Refuge rules, as well as his claim that he was unable to remember his actions on the night of his most recent arrest. The court further found that Defendant had repeatedly demonstrated his unwillingness to abide by the conditions of probation, and that, despite multiple opportunities at drug treatment and his being aware that he could receive

prescription mental health medication, he instead "used heroin and cocaine by choice." Accordingly, the court revoked Defendant's probation and ordered his original sentences into execution.

## Analysis

On appeal, Defendant contends that the trial court abused its discretion in revoking his probation and ordering his sentences into execution rather than returning him to supervised release or imposing a period of split confinement followed by modified conditions of supervised probation tailored to address his mental health and substance use disorders. Asserting that the record demonstrates that his criminal history is primarily drug-related and that he has never received consistent or reliable mental health medication and treatment, Defendant argues that neither the best interest of the public nor himself are served by his incarceration. The State responds by arguing, among other things, that Defendant's admitted probation violations were alone sufficient to justify the trial court's full revocation of probation.

In general, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). In probation revocation cases, the trial court abuses its discretion when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). The probation violation does not have to be proven beyond a reasonable doubt. *State v. Leach,* 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995); *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). "The evidence need only show the trial judge has exercised conscientious judgment in making the decision rather than acting arbitrarily." *Id.* (quoting *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980)). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991); *see also State v. Farrar,* 355, 585 (Tenn. Crim. App. 2011).

Upon finding by a preponderance of the evidence that a defendant has violated the conditions of probation, the trial court may, in its discretion, return the defendant to probation with modified conditions as necessary, extend the probationary term by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. *See* §§ 40-35-308 (a), (c), -310, -311 (e)(1). "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999

- 6 -

WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999), *perm. app. denied* (Tenn. June 28, 1999).

Defendant contends that the trial court abused its discretion in the second step of the revocation process by not properly considering his mental health and substance abuse issues in its selection of the appropriate consequence for his admitted violations of his probation. Defendant asserts that the trial court's determination of the consequences for a probation violation involves a separate exercise of discretion and, if so, "then something more than the violation itself must be relevant and reviewable on appeal." Defendant notes, however, that the appropriate standard and scope of appellate review in probation revocation cases is an issue that is currently pending in our supreme court. *See* Order, *State v. Craig Dagnan*, No. M2020-00152-SC-Rll-CD, (Tenn. Apr. 7, 2021).

Regardless of whether or not a trial court engages in a separate, or second, exercise of discretion in determining the appropriate consequences of a defendant's violation of probation, we disagree with Defendant's contention that the trial court in the case at bar "fail[ed] to consider the context surrounding [Defendant's] probation violations[.]" In its determination that Defendant's probation should be fully revoked, the trial court noted Defendant's multiple past opportunities for rehabilitation and drug treatment, as well as his belligerent attitude with the House of Refuge staff, his flight from police after providing officers with false identifying information, and his combative behavior with the jail staff. We agree with the State that the trial court's characterization of Defendant's use of heroin and cocaine as a "choice" was based on Defendant's admission that he could have continued to receive prescription mental health medications from the Johnson Medical Health Center but instead self-medicated with street drugs. We, therefore, find no abuse of discretion in the trial court's decision to fully revoke Defendant's probation and order his original sentences into execution.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JILL BARTEE AYERS, JUDGE

- 7 -